IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JODI GLEBE as Special Administrator of the )
Estate of Terry Adams, and )
JODI GLEBE individually and as an heir at law of )
Terry Adams, )
        Plaintiffs, )
 )
vs. ) Case No.
 )
KIRKENDALL DWYER LLP, )
        Defendant. )
_____)

## COMPLAINT

COME NOW the Plaintiffs, and for their causes of action against the above-named Defendant, and in support thereof, state and allege:

1. Jodi Glebe has been duly appointed as the Special Administrator of the Estate of Terry Adams in Graham County, Kansas, and brings this action for all damages suffered by the Estate of Terry Adams.

2. Jodi Glebe is an individual and resident of the state of Nebraska. Jodi Glebe is one of the adult children of Terry Adams, and brings this action for all damages suffered by the heirs at law of Terry Adams.

3. Kirkendall Dwyer LLP is a foreign limited liability partnership organized under the laws of the State of Texas. Kirkendall Dwyer LLP may be served with process by serving its registered agent, Irving J. Jacobs, at 2115 West 71st Street, Prairie Village, KS 66208. Kirkendall Dwyer LLP does business as "Law Tigers".

4. There is complete diversity of citizenship between Plaintiffs and Defendant.

5. This Court has subject matter jurisdiction over the cause of action and personal jurisdiction over the parties.

6. On July 4, 2021, Geralda Keith (hereinafter "Ms. Keith" or "the tortfeasor") was operating a motor vehicle in Graham County, Kansas, on 275th Avenue. Ms. Keith had a stop sign which required her to stop and yield the right-of-way to traffic on Highway 24. Instead of stopping and yielding the right-of-way, Ms. Keith attempted to make a left turn by cutting the corner. When Ms. Keith did so, she drove into the side of a motorcycle which was being ridden by Terry Adams.

7. As a result of being hit, Terry Adams suffered multiple thoracic vertebral fractures, multiple rib fractures, a right hemopneumothorax, a liver laceration, a spleen laceration, a small bowel mesenteric injury, and right tibia and fibula fractures. Despite these physical injuries, he was conscious and experiencing great pain and suffering at the scene and for a period of time after being taken by ambulance to the hospital.

8. Mr. Adams underwent emergency surgery for a splenectomy and for repair of mesenteric injuries, and an external fixator was placed on his right lower extremity.

9. Notwithstanding heroic medical efforts, Mr. Adams died from the injuries in the early morning hours of July 5, 2021.

10. Shortly after her father's death, a relative told Jodi Glebe that she needed to hire the "Law Tigers", as Law Tigers specialize in representing motorcyclists and their families.

11. Ms. Glebe did as recommended and called what she thought was "Law Tigers", and ended up speaking with Irving J. "Josh" Jacobs at Law Tigers / Kirkendall Dwyer LLP.

12. Josh Jacobs is an employee of Kirkendall Dwyer LLP, and Kirkendall Dwyer LLP is vicariously liable for the actions and inactions of Josh Jacobs pursuant to the doctrine of *respondeat superior*.

13. Josh Jacobs stated that his firm specialized in representing motorcyclists and their families,

that they win all their cases, and that they would sue Ms. Keith and the hospital.

14. Based on what she had been told about "Law Tigers" and based on what Mr. Jacobs said, Ms. Glebe decided to hire Law Tigers / Kirkendall Dwyer LLP to pursue claims against Ms. Keith and the hospital where Mr. Adams was treated. Ms. Glebe signed the Law Tigers / Kirkendall Dwyer LLP "Power of Attorney and Contingent Fee Contract" on July 13, 2021.

15. Shortly after hiring Law Tigers / Kirkendall Dwyer LLP the same relative told Ms. Glebe that there was an issue with "Law Tigers" in Kansas, so Ms. Glebe looked at the Law Tigers and Kirkendall Dwyer LLP websites and saw the reviews, saw the results, and saw that there were several attorneys who represented themselves to be "Kansas Motorcycle Attorneys". Based on this and other information on their websites (which Ms. Glebe later learned was false), Ms. Glebe decided to stay with Law Tigers / Kirkendall Dwyer LLP as it appeared that there was a big team of experienced Kansas attorneys who could and would do as was promised.

16. The tortfeasor only had $100,000.00 in liability insurance limits, and the liability limits were quickly offered by the insurance company.

17. Mr. Jacobs told Ms. Glebe that the $100,000.00 was all that could be recovered and advised Ms. Glebe to accept the $100,000.00 policy limits. Ms. Glebe responded that she understood that the tortfeasor was a farmer and owned a bunch of land. Mr. Jacobs responded that there was no land, that "you can't get blood out of a turnip", and that Ms. Glebe should just take the $100,000.00 which had been offered. This conversation occurred a number of times, with Mr. Jacobs repeatedly advising that Ms. Glebe should just take the $100,000.00 which had been offered.

18. Without Ms. Glebe's permission, Mr. Jacobs told the insurance company and the defense

3

attorney hired by the insurance company that his client would settle for payment of the policy limits if there was no other insurance. In his limited communications with the insurance adjuster and the defense attorney, Mr. Jacobs did not mention the tortfeasor's non-exempt assets such as land, bank accounts, income from farm rentals, and oil royalties, etc.

19. On May 19, 2022 – almost a year after being hired - Mr. Jacobs did a recorded statement of the tortfeasor and asked her about insurance. Again, Mr. Jacobs did not ask the tortfeasor any questions about her non-exempt assets such as land, bank accounts, income from farm rentals, and oil royalties, etc.

20. Mr. Jacobs again told Ms. Glebe that the $100,000.00 was all that could be recovered - that the tortfeasor did not have any assets.

21. More than another year went by with Law Tigers / Kirkendall Dwyer LLP doing essentially nothing on the case, and with Mr. Jacobs not responding to phone calls and messages from Ms. Glebe.

22. The same thing happened with counsel hired by the insurance company. Josh Jacobs did not respond to phone calls, did not return phone messages, and did not respond to emails.

23. Frustrated with not being able to get any response from Mr. Jacobs, defense counsel finally just sent settlement paperwork to Mr. Jacobs for the $100,000.00 which had been offered and which Mr. Jacobs had said would be accepted if there was no other insurance.

24. Shortly before the statute of limitations, Mr. Jacobs again told Ms. Glebe that the $100,000.00 was all that could be recovered and that she should accept the policy limits. After being worn down by the frustration of not being able to get Mr. Jacobs on the phone, and after repeated representations by Mr. Jacobs that the tortfeasor did not have anything that could be pursued, Ms. Glebe signed the settlement paperwork and returned it to Mr. Jacobs.

25. Ms. Glebe then learned for a fact that the tortfeasor did have personal non-exempt assets which could be pursued. Accordingly, Ms. Glebe fired Law Tigers / Kirkendall Dwyer LLP and attempted to pursue Ms. Keith's personal assets.

26. Contrary to Mr. Jacobs' representations, discovery revealed that the tortfeasor owned hundreds of acres of farm land, owned two residences, had a savings account with a balance of approximately $120,000.00, that the tortfeasor received rental payments for some of the farm land, and that the tortfeasor received oil royalties.

27. Ultimately, the district court ruled that there was an enforceable settlement for the $100,000.00 policy limits and prohibited Plaintiffs from pursuing any of the tortfeasor's personal non-exempt assets.

28. During the time that Defendant was representing Plaintiff, the tortfeasor gave away most of her farmland and one of her residential properties.

29. The delays caused by the lack of diligence of Josh Jacobs and Law Tigers / Kirkendall Dwyer LLP, resulted in the tortfeasor's property being given away, and loss of earnings and interest from any money recovered from the tortfeasor and the tortfeasor's insurance company.

30. The lack of diligence on the part of Josh Jacobs and Law Tigers / Kirkendall Dwyer LLP resulted in Plaintiffs not being able to pursue all of their damages from the tortfeasor's personal assets.

31. Josh Jacob's erroneous or false statements that the tortfeasor did not have any assets resulted in Plaintiffs not being able to pursue all of their damages from the tortfeasor's personal assets.

32. Josh Jacob's and Law Tigers / Kirkendall Dwyer LLP's failure to investigate the tortfeasor's assets, or even to simply ask the tortfeasor about her personal assets resulted in Plaintiffs not

being able to pursue all of their damages from the tortfeasor's personal assets.

33. At the time that Ms. Glebe hired Law Tigers / Kirkendall Dwyer LLP, Ms. Glebe did not know that:

   A. "Law Tigers" is merely a marketing company that sells franchises to law firms, then acts as a for-profit lawyer referral service;

   B. When Ms. Glebe called "Law Tigers", her call was routed to Kirkendall Dwyer LLP. The call to Law Tigers was not routed to Kirkendall Dwyer LLP because they were experienced Kansas motorcycle attorneys as represented; but, rather, her call was routed because Kirkendall Dwyer LLP had paid money to Law Tigers to license the Kansas franchise and to be referred cases. Ms. Glebe was not told that by being placed on hold and being routed to Mr. Jacobs, she was merely being referred to an employee of the franchise owner;

   C. The "Law Tigers" advertisements which induced her relative to recommend the firm, which induced Ms. Glebe to hire the firm, and which induced Ms. Glebe to stay with the firm, were false and misleading;

   D.. The case results and client testimonials which had been shown were for other law firms that had purchased Law Tigers franchises, and were not for Kirkendall Dwyer LLP;

   E. Kirkendall Dwyer LLP was a Texas law firm, and that only one of the attorneys who the firm falsely represented to be "Kansas motorcycle attorneys" was actually licensed in Kansas; and

   F. The firm's presence in Kansas was essentially a sham, with phone calls to what she thought was a Kansas office being answered in Las Vegas.

### Fraudulent Inducement

34. As set forth above, the Defendant made numerous material misrepresentations and omissions of fact.

35. The Defendant knew that the representations were false.

36. The Defendant made the misrepresentations and omissions with the intent to defraud Plaintiffs and other motorcycle accident victims in Kansas.

37. Plaintiffs reasonably relied on the misrepresentations without knowing that they were false.

38. Plaintiffs suffered damages as a result of the fraudulent inducement, as set forth above

### Breach of Contract

39. There was a legally enforceable agreement between Plaintiffs and Defendant.

40. Plaintiffs performed all contractual obligations.

41. Defendant failed to perform material obligations under the contract by:

    A. Failing to meet industry standards; and

    B. Substantially deviating from expected and required performance.

42. Defendant's breach directly caused harm and damages to Plaintiffs.

43. Plaintiffs suffered financial and other losses due to the breach, as set forth above.

### Breach of Fiduciary Duty

44. As Plaintiffs' attorney, Defendant owed Plaintiffs a fiduciary duty, requiring Defendant to act in the best interests of Plaintiffs.

45. Defendant failed to uphold its fiduciary obligation by failing to disclose material facts, bu gross negligence, and by misconduct.

46. Defendant's breach of its fiduciary duty owed to Plaintiffs directly caused harm and financial loss to Plaintiffs.

47. Plaintiffs suffered actual harm due to the breach of fiduciary duty, including financial losses and lost opportunities.

## Negligence / Legal Malpractice

48. Defendant owed a duty of care to the Plaintiffs, arising from the attorney-client relationship. This duty included the requirement to provide diligent, competent, accurate and thorough legal representation consistent with professional standards.

49. Defendant failed to meet the standard of care expected in the legal profession by:

    A. Providing false or erroneous information about the tortfeasor's assets;

    B. Not doing thorough research or a thorough investigation regarding the tortfeasor's assets;

    C. Not being diligent during the course or representation;

    D. Not taking calls, not returning messages, and not communicating with Plaintiffs as required by professional standards;

    E. Telling the insurance carrier and defense counsel, without authority from Plaintiffs, that Plaintiffs would settle for the tortfeasor's $100,000.00 policy limits and would provide a complete release if liability if there was no other insurance;

    F. Negligently hiring Josh Jacobs;

    G. Failing to properly train Josh Jacobs;

    H. Failing to properly supervise Josh Jacobs;

    I. Negligently retaining Josh Jacobs;

    J. And in other respects.

50. Defendant's negligence directly caused harm.

51. Plaintiffs suffered financial and other harms, including monetary losses and lost legal claims,

due to Defendant's negligence, as set forth above.

## Punitive Damages

52. Defendant knew that if it breached its fiduciary duty, and that if it did not provide diligent, competent, accurate and thorough legal representation consistent with professional standards, that Defendant would put Plaintiffs at risk of financial loss.

53. Defendant disregarded those risks, evidencing a complete indifference to the danger or a reckless disregard for the danger.

54. As a result of Defendant's reckless disregard for the probable consequences of its actions, Plaintiffs were damaged as set forth above.

55. Accordingly, Plaintiffs bring a claim for punitive damages against Defendant.

56. or resulting in PlaintiffsDefendant's actions as set forth above were reckless, putting PEric M. Diaz was a passenger in Defendant's vehicle.

57. As Defendant Matthew Karabas was driving in the lane for oncoming traffic Defendant negligently and recklessly drove his vehicle head-on into an oncoming semi tractor-trailer.

58. As a result of Matthew Karabas' negligent and illegal conduct and the collision, Eric M. Diaz was killed.

59. Defendant knew that by operating a vehicle while under the influence of alcohol he was putting others at risk of injury or death.

60. Defendant knew that by operating a vehicle in the wrong lane of traffic he was putting others

at risk of injury or death.

61. Defendant knew that fleeing law enforcement and participating in illegal conduct was putting others at risk of injury or death.

62. Defendant chose to ignore these risks and the probable consequences of his actions, causing a collision and the death of Eric M. Diaz.

63. Defendant's conduct was willful and reckless, warranting an award of punitive damages.

64. Defendant's conduct, in violation of statutory law, was negligence *per se.*

65. Eric R. Diaz and Katherina Diaz bring this action as heirs at law of Eric M. Diaz for all damages allowed by the Kansas Wrongful Death Act for the wrongful death of their son, including but not limited to: loss of filial care, attention, and protection; loss of earnings; reasonable funeral expenses; mental anguish, suffering and bereavement; loss of society, loss of comfort, and loss of companionship; and for punitive damages..

WHEREFORE, each of the Plaintiffs pray for judgment against the above-named Defendant in an amount in excess of $75,000.00, plus costs, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/Matthew L. Bretz
Matthew L. Bretz, KS #15466
**BRETZ INJURY LAW, LLC**
3 Compound Drive
P.O. Box 1782
Hutchinson, KS 67504-1782
(620) 662-3435
Fax (620) 662-3445
Matt@bretzinjurylaw.com
Attorney for Plaintiffs

## **REQUEST FOR JURY TRIAL**

COME NOW the Plaintiffs and respectfully make demand for trial by a jury of all issues herein joined.

Respectfully submitted,

/s/Matthew L. Bretz_____
Matthew L. Bretz
Attorney for Plaintiffs